Walker F. RUCKER et al., Plaintiffs,

v.

Edward E. WILLIS et al.

Civ. No. 975.

United States District Court,
E. D. North Carolina,
New Bern Division.

May 4, 1973.

**426**

Norman B. Smith, Smith, Patterson, Follin & Curtis, Greensboro, N. C., for plaintiffs.

Thomas P. McNamara, U. S. Atty., by John E. Lansche, Asst. U. S. Atty., Chief, Land & Natural Resources Section, Raleigh, N. C., Henry C. Boshamer, McNeill, Boshamer & Graham, Morehead City, N. C., John R. Hughes, Anderson & Hughes, Shallotte, N. C., for defendants.

## MEMORANDUM OPINION AND ORDER

LARKINS, District Judge:

This cause is now before this Court on a Motion for Temporary Restraining Order and Preliminary Injunction by the plaintiffs. Plaintiffs seek to bring a class action, "on their own behalf and on behalf of all others similarly situated," pursuant to Rule 23 of the Federal Rules of Civil Procedure, to enjoin the defendants from constructing a proposed marina and piers on Bogue Bank in Carteret County, North Carolina. This opinion is the result of two hearings and consideration by this Court of briefs and memoranda submitted by each of the parties in this case.

## FINDINGS OF FACT

Defendant Edward E. Willis owned a tract of land on Bogue Bank, immediately to the east of the town limits of Emerald Isle, occupying the entire width of the Bank from the Atlantic Ocean to Bogue Sound. The tract of land is about 500 feet in length. Defendant Willis and defendant Twin Piers, Inc. entered into an arrangement for the development of this property, by the construction thereon of a pier extending approximately 1,000 feet into the Atlantic Ocean and a pier and marina extending into Bogue Sound. There is no marsh land on this property. These defendants have leveled the sand dunes on the Bank and plan to construct paved parking lots and buildings in order to operate a fishing pier, marina, and associated businesses on the property.

On December 7, 1972, the Wilmington District, U. S. Army Corps of Engineers, Wilmington, North Carolina, received a request from Mr. Edward E. Willis, Salter Path, North Carolina, for a permit authorizing him to (1) construct a commercial fishing pier, and (2) construct a commercial fishing and boating pier and to excavate a boat basin and access channel in the Atlantic Ocean and Bogue Sound, respectively, at approximately 1.5 miles west of Salter Path, North Carolina. In accordance with Engineer Regulation No. 1145–2–303, public notice of this application was made on January 4, 1973. Copies of the public notice were furnished to Federal and State agencies, environmental organizations, and other interested persons. Each interested person or agency had thirty days in which to comment. Some objections were received by the Corps of Engineers and the Corps sent Mr. Willis a letter dated March 22, 1973, which stated that the objections expressed were matters of local zoning and were outside the authority of the Corps of Engineers. Only one government agency wanted the permit modified, no other Federal, State or local agencies had any opposition to the issuance of the permit. The Environmental Protection

Agency, which is responsible for water quality, did not respond to the Public Notice. After following administrative procedure the District Engineer decided that no Environmental Impact Statement was needed prior to the issuance of the Permit #SAWKS–73–16–13–034. The proposed modification made by the Department of the Interior were made a part of the permit issued on April 9, 1973 to defendant Willis from the Department of the Army. Immediately thereafter defendants Willis and Twin Piers, Inc. began construction of the planned piers and marina.

Plaintiffs Walker F. Rucker and wife, Rebecca F. Rucker, are adjoining property owners. Their real property is located immediately to the west of the property being developed by defendant Twin Piers, Inc., on the Bogue Sound side of the Bank and within the town limits of Emerald Isle. Plaintiffs Mary J. McLean and Sarah J. Jolly and husband, Bruce O. Jolly, own real property located immediately to the west of the property of the plaintiffs Rucker, also within the town limits of Emerald Isle, on the Bogue Sound side of the Bank. Plaintiffs contend that with respect to each of them, the amount in controversy in this action is in excess of $10,000.00, exclusive of interest and costs. Plaintiffs allege that the project significantly affects the environment and if completed will irreparably damage the natural environment. Plaintiffs specifically charge that the project will subject their property to accelerated erosion and will make it susceptible to breach during hurricanes.

The essence of plaintiffs' claim is that the federal defendants failed to file an environmental impact statement, which, they contend, is specifically required by the National Environmental Policy Act, 42 U.S.C. § 4332(2)(C), and the regulations implementing that statute. Plaintiffs' secondary position is that the dredging and pier building permits issued by the federal defendants in this case were arbitrary exercises of governmental authority, in violation of the substantive standards established by the National Environmental Policy Act, 42 U.S.C. § 4331, and the statutes authorizing such permits, 33 U.S.C. § 403 and 33 U.S.C. § 419. Therefore, plaintiffs conclude that the permits were issued illegally because no environmental impact statement, providing a detailed statement of the environmental effect of the dredging and pier construction, was filed. They want to have defendants Willis and Twin Piers, Inc., enjoined from completing this project.

## CONCLUSIONS OF LAW

The primary jurisdictional statute here is 28 U.S.C. § 1331(a), conferring jurisdiction on federal courts for an action where the matter in controversy exceeds the value of $10,000.00, and "arises under the Constitution, laws, or treaties of the United States." The federal laws from which this action arises include the Administrative Procedure Act, 5 U.S.C. § 702; the National Environmental Policy Act, 42 U.S.C. § 4331 et seq.; and the Corps of Engineers' authority for granting dredging and pier construction permits, 33 U.S.C. § 403 and 33 U.S.C. § 419. The complaint in this action presents a claim founded upon federal law. Plaintiffs are seeking to enforce the National Environmental Policy Act by requiring the Corps of Engineers to file an environmental impact statement before issuing permits for dredging and pier construction. The United States Attorney is counsel for the defendants and is in no position to enforce this Act. Plaintiffs are allowed to enforce the law as "private attorneys general". Natural Resources Defense Council v. Grant, 355 F.Supp. 280 (EDNC1973). Therefore, plaintiffs have standing as private parties to seek injunctive relief against violations of the National Environmental Policy Act. Natural Resources Defense Council v. Grant, *Supra.*

The plaintiffs seek to bring this suit as a class action pursuant to Rule 23 of the F.R.C.P., alleging that the principal class represented by them "consists of

all persons who live and travel upon Bogue Banks and the surrounding area, and who have interests in the preservation and enhancement of the natural environment of this area." In addition, plaintiffs claim to represent "all of those persons who own real property on Bogue Bank, North Carolina." While the plaintiffs have made a claim of loss for the purposes of meeting the requirements of jurisdictional amount as to themselves, no such an allegation has been made with respect to any of the unnamed members of the alleged "class" plaintiffs claim to represent.

In Zahn v. International Paper Co., 53 F.R.D. 430 (D.Vt.1972), the Court held, in an action brought by four lakefront owners against an alleged polluter for damages, that the action could not be maintained as a "class action" because the Court could find no proper class over all the members of which it could hold jurisdiction, relying on Rule 23(b)(3) of the Federal Rules of Civil Procedure. The court in Zahn found this to be a "spurious" class action where claims of the class members are actually separate and distinct. Interpreting Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), rehearing denied 394 U.S. 1025, 89 S.Ct. 1622, 23 L.Ed.2d 50 (1969), the court in Zahn held that each class member, unnamed as well as named, must independently satisfy the requirement as to jurisdictional amount.

■■ There is an enormous economic impact on defendants in cases properly sustained as class actions. The mere possibility of a judgment for damages to each member of a class can seriously affect the credit and financial life of a corporation. In addition, the res adjudicata effect of a class action must be considered. A judgment either for or against the defendant is binding on all members of the class. Therefore the potential effects of a class action are enormous. Because the plaintiffs do not satisfy the requirement as to jurisdictional amount with respect to each class mem-

ber, they cannot maintain a proper "class action" pursuant to Rule 23 of the Federal Rules of Civil Procedure.

The last issue to be considered is whether the permits were issued illegally because no environmental impact statement was made. Plaintiffs contend that an environmental impact statement was specifically required by the National Environmental Policy Act and that the issuing of the dredging and pier building permits by the federal defendants was an arbitrary exercise of governmental authority in violation of the substantive standards of the Act and the statutes authorizing such permits.

■ Section 102(C) of the National Environmental Policy Act of 1969 (NEPA) provides for the preparation and circulation of an environmental impact statement in all those cases where a federal agency is involved in making a recommendation for legislation or when contemplating a "major federal action, significantly affecting the quality of the human environment." NEPA attempts to create a new frame of reference for the consideration of environmental problems by all government agencies. Each agency whose actions have environmental side effects must consider these effects in addition to carrying out their primary mission. The aim of NEPA is to internalize within each agency a procedure for assuming environmental protection.

■ On April 23, 1971, the Council on Environmental Quality (CEQ) published Guidelines on "Statements on Proposed Federal Actions Affecting the Environment" requiring Federal agencies to establish, in consultation with CEQ, formal procedures for complying with the measures required by Section 102(2)(C) of NEPA.

Thereafter, on February 2, 1972, the Army Corps of Engineers published regulations in 37 F.R. 2525, regarding the preparation of environmental statements

and coordination of such statements. Paragraph 4(a) of the regulation provides:

> (a) *Systematic review.* The act requires an environmental statement in those instances where a major Federal action has a significant impact upon the environment. To fully support the spirit of the act, the systematic review of all Corps of Engineers *projects* will be conducted and environmental statements prepared for all such *projects,* whether or not required by the act, unless the environmental impact of the *project* are found too insignificant to warrant the cost and delay involved in preparing a statement. If the District or Division Engineer is in doubt as to whether or not a statement should be prepared, further guidance must be requested in accordance with (d) below. (Emphasis added).

This paragraph refers to projects of the Corps of Engineers, and not to the issuance of a permit for a private party to proceed with a regulated activity.

Paragraph 5 of the regulations lists agency actions which do require an environmental statement. Subparagraph (g) states as follows:

> (g) *Regulatory permits.* Subject to the considerations contained in the specific regulations applicable to the particular activity, issuance of permits for structures, discharges, deposits, or other actions in navigable waters of the United States whenever any of the Federal, State, or local agencies which are authorized to develop and enforce environmental standards certify, and the District Engineer determines, as a matter of record that the proposed action would have a significant and adverse effect on the quality of the environment. Any disclosure or release of information to the public will be in accordance with the Freedom of Information Act

(5 U.S.C. 552) protecting trade secrets and commercial or financial information. . . .

In the present case, however, the District Engineer determined that the issuance of the permit would not have an adverse effect and, so, an Environmental Impact Statement would not be required.

The District Engineer followed the regulations laid out in paragraph 11(c) which states as follows:

> (c) *Regulatory permits.* In evaluating permit applications, the District Engineer will carefully evaluate the impact on the environment of the proposed action considering environmental information provided by the applicant, all advice received from Federal, State and local agencies, and comments of the public. If the District Engineer believes that granting the permit may be warranted but could lead to significant environmental degradation, an environmental statement will be prepared, . . .

This Court finds as a fact that the District Engineer's decision not to require an Environmental Impact Statement was not arbitrary or capricious. On the contrary, his decision not to require an Environmental Impact Statement and to issue the permits was made after he had given public notice to Federal and State agencies, environmental organizations, and other interested persons, and had received and studied their replies. His decision was based on the fact that no Federal, State or local agencies certified to him that the permit would have a significant and adverse effect on the human environment.

Only one government agency wanted the permit modified. This proposal, made by the Department of the Interior, was granted and made a part of the permit issued on April 9, 1973. It is the policy of the Corps of Engineers, when it receives significant comment on an

area, to send a copy to the agency which is responsible for that particular area. In this case, the comments of the landowners in opposition to the project did not put forth any new ideas which had not already been covered by the appropriate governmental groups. These comments were, therefore, referred to the planning Board of Carteret County. This Board stated that there would be no violation of any zoning ordinances and did not oppose the project. It is clear that the District Engineer and the Corps of Engineers followed a systematic procedure and reached a reasonable decision in not requiring an impact statement before granting the permits in this case.

██ This Court further finds as a fact that the project in this case is not a "major federal action" which significantly affects the quality of the human environment. There is no Federal action as to more than ninety percent (90%) of the destruction alleged and complained of by the plaintiffs. There is no marsh land involved. There are no federal funds involved in the project. The only federal involvement in the project has been by the many agencies reviewing the application for a permit, and reviewing only, does not constitute "major federal action" as contemplated in NEPA. Federal involvement is only below the mean-high water line. Since more than ninety (90%) of the project is above the mean-high water line, this cannot be considered "major federal action".

Now therefore, in accordance with the foregoing, it is

Ordered, that the plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction be, and the same is, hereby, denied, and,

Further ordered, that the Clerk shall serve copies of this Order upon Counsel of Record.

Let this Order be entered forthwith.