Walker F. RUCKER et al.,
Plaintiffs-Appellants,

v.

Edward E. WILLIS et al.,
Defendants-Appellees.

No. 73–1570.

United States Court of Appeals,
Fourth Circuit.

Argued June 4, 1973.

Decided Aug. 23, 1973.

Norman B. Smith, Greensboro, N.C. (Smith, Patterson, Follin & Curtis, Greensboro, N.C. on brief), for appellants.

Peter R. Steenland, Atty., U. S. Dept. of Justice, John R. Hughes, Greensboro, N.C. for Twin Piers and Willis (Wallace H. Johnson, Asst. U. S. Atty. Gen., Thomas P. McNamara, U. S. Atty., John E. Lansche, Asst. U. S. Atty., and Edmund B. Clark, Atty., U. S. Dept. of Justice, on brief), for appellees.

Before HAYNSWORTH, Chief Judge, and CRAVEN and WIDENER, Circuit Judges.

WIDENER, Circuit Judge:

■■ In this appeal, plaintiffs seek to reverse the denial of a temporary injunction which would have enjoined *pendente lite* the construction of a proposed marina and piers on Bogue Bank, Carteret County, North Carolina, a part of North Carolina's outer banks. Plaintiffs' claim is predicated upon the assertion that the Corps of Engineers acted illegally in issuing a permit under 33 U.S.C. § 403[1] without first preparing an environmental impact statement pursuant to § 102(2)(C) of the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. § 4331 et seq. The principal issue argued on appeal is whether the Corps of Engineers abused its discretion in determining, under the particular facts of this case, that the granting of a permit for the construction of fishing piers and a boat basin was not a major federal action significantly affecting the quality of human environment so as to require preparation of an environmental impact statement.[2]

---

1. The United States Army Corps of Engineers has authority to grant permits such as the one in question under provisions of the Rivers and Harbors Appropriation Act of 1899, 33 USC § 403 (1972), which provide:

"The creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is prohibited; and it shall not be lawful to build or commence the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any port, roadstead, haven, harbor, canal, navigable river, or other water of the United States, outside established harbor lines, or where no harbor lines have been established, except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army; and it shall not be lawful to excavate or fill, or in any manner to alter or modify the course, location, condition, or capacity of, any port, roadstead, haven, harbor, canal, lake, harbor of refuge, or inclosure within the limits of any breakwater, or of the channel of any navigable water of the United States, unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of the Army prior to beginning the same."

2. The more narrow and proper issue for us is whether the district court improvidently exercised its discretion in refusing to issue the temporary injunction. Sims v. Central Trust Co., 123 F.2d 89 (4th Cir. 1941). To set aside the order of the district court, it must be " . . . plainly . . . an improvident exercise of judicial discretion." Aberdeen, etc. v. S. C. R. A. P., 409 U.S. 1207, 93 S.Ct. 1, 34 L.Ed.2d 21 (1972). (Opinion in chambers by the Chief Justice.)

Since the ruling of the district court depends on the actions of the Corps of Engineers, it is in that context the problem will be discussed. The conclusion we reach as to the propriety of the actions by the Corps of Engineers should go only to our review of the actions of the district court on the record before us and does not intimate any opinion on the whole case upon a full record.

The district engineer issued no written findings. Neither did he specifically state that an impact statement was not necessary. From the issuance of the permit, however, the necessary inference is a finding that no impact statement was necessary, since the statute, 42 U.S.C. § 4332(2)(C), and the applicable regulation, 37 Fed.Reg. 2525 (Feb. 2, 1972), para. 11(c), both require a statement if their conditions are met, but do not require a negative finding

Finding neither an abuse of discretion by the Corps of Engineers nor sufficient federal involvement to constitute major federal action, the district court denied plaintiffs' motion for a temporary restraining order and preliminary injunction.

We find neither improvident exercise of discretion by the district court nor abuse of discretion by the Corps of Engineers and affirm.

I

Edward E. Willis owns a tract of land on Bogue Bank, immediately to the east of the town limits of Emerald Isle, occupying the entire width of the Bank from the Atlantic Ocean to Bogue Sound.[3] Willis and Twin Piers, Inc., have entered into an arrangement for the development of this property by the construction thereon of the proposed marina and piers.

On December 7, 1972, the Wilmington, North Carolina District of the United States Army Corps of Engineers received a request from Edward E. Willis, Salter Path, North Carolina, for a permit authorizing him to construct, on and adjoining his property above referred to, a commercial fishing pier extending about 1,000 feet into the Atlantic Ocean, and to construct, on the opposite side of the bank, a fishing and boating pier on Bogue Sound, including a boat basin and access channel created by dredging. This application for a permit was considered by the Corps under Rule 11(c) of its regulations governing the preparation of environmental statements. 37 Fed.Reg. 2525 (Feb. 2, 1972). Paragraph 11(c) provides, in relevant part:

"*Regulatory permits.* In evaluating permit applications, the District Engineer will carefully evaluate the impact on the environment of the proposed action considering environmental information provided by the applicant,

all advice received from Federal, State and local agencies, and comments of the public. If the District Engineer believes that granting the permit may be warranted but could lead to significant environmental degradation, an environmental statement will be prepared. . . ."

Accordingly, public notice of this application was given on January 4, 1973. Copies of the public notice were mailed to the appropriate federal, state and local agencies, numerous environmental groups, and various interested universities, corporations, individuals and private organizations. Included in this mailing were, for example, the regional Bureau of Sport Fisheries and Wildlife; the regional Bureau of Outdoor Recreation; the regional Field Representative of the Secretary of the Interior; all components of the Department of the Interior; the regional Shellfish Consultant of the Food and Drug Administration; the Environmental Protection Agency, Permit Branch, Enforcement Division; the regional Director of the National Park Service; the Southeastern Archeological Center of the Park Service; various other officials of the Corps; the Director of Water and Air Resources and the Division of Commercial and Sport Fisheries, both of the North Carolina Department of Natural and Economic Resources; the Sierra Club; the Conservation Council of North Carolina; the Town of Emerald Isle; the County Commissioners of Carteret County; and approximately 156 other groups, agencies and individuals.

As indicated by the regulations, the purpose of the public notice is to elicit comments about the proposed project for the benefit of the Division Engineer of the Corps. These comments are then considered by the Corps in conjunction with its own analysis of the application in order to determine if the proposed project may be a major federal action

---

or statement. Cf. Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 91 S. Ct. 814, 28 L.Ed.2d 136 (1971).

3. The Willis property is at a narrow part of Bogue Bank, where its width from the Atlantic Ocean to Bogue Sound is about 600 feet.

having a significant effect upon the human environment, and therefore falls within NEPA's mandates.

After a three-month period of study and consideration, the Corps determined, on April 6, 1973, that no environmental impact statement was necessary for this project, and it issued the permit in question. On April 19, 1973, the plaintiffs[4] filed their complaint and motion for a temporary restraining order and preliminary injunction. The district court denied that motion on May 4, 1973, 358 F. Supp. 425. This appeal followed.

## II

Pursuant to the mandate of the National Environmental Policy Act of 1969, 42 U.S.C. § 4331 et seq.,[5] and as expressed in § 102(2)(C) of that Act, 42 U.S.C. § 4332(2)(C), a federal agency has the duty to prepare a detailed environmental statement on every major federal action significantly affecting the quality of the human environment. In order to determine which of its actions as a federal agency triggers the provisions of § 102(2)(C), the Corps has promulgated its own regulations implementing the National Environmental Policy Act. Those regulations, set forth at 37 Fed.Reg. 2525 (Feb. 2, 1972), supra, require the District Engineer to evaluate environmental information about a project before either granting a regulatory permit or withholding it pending preparation of the environmental statement.

He is required to consider the advice received from other federal agencies, as well as state and local agencies and comments of the public. In this manner, the official is able to make an informed threshold decision on the applicability of NEPA's mandates.

In this case, the District Engineer gave public notice of the proposed project to more than 150 groups, agencies and interested individuals. A number of agencies possessing special expertise in relevant subjects conducted studies of the proposed project and submitted their advice and comments. The Bureau of Sport Fisheries and Wildlife, a division of the Department of the Interior, responded by recommending that the Corps modify the proposed permit in order to "adequately protect this valuable estuarine resource." Apart from these modifications, which were accepted by the Corps, there was no objection to the permit. In addition, the Commissioner of the Division of Commercial and Sport Fisheries of the North Carolina Department of Natural and Economic Resources had no objection. The necessary state permit, representing the coordinated state viewpoint on the project, was issued to the applicant but conditioned upon several terms to insure the affected area against adverse environmental impact. Also, the State Director of Water and Air Resources informed the Corps that his agency had no objection to the project. Similar comments were

---

4. Plaintiffs Walker F. Rucker and wife, Rebecca F. Rucker, own adjoining property immediately to the west of the property being developed. Plaintiffs Mary J. McLean and Sarah J. Jolly and husband, Bruce O. Jolly, own real property located immediately to the west of the Ruckers' property. The Conservation Council of North Carolina, a private interest group dedicated to environmental concerns, was permitted to be joined as a plaintiff after this action was instituted in the district court.

5. The substantive policy of NEPA, set forth in § 101 of the Act, 42 U.S.C. § 4331, requires the federal government to "use all practicable means and measures" to protect environmental values, to avoid environmen-

tal degradation, preserve "historic, cultural, and natural" resources, and promote "the widest range of beneficial uses of the environment without . . . undesirable and unintended consequences." § 102, 42 U.S.C. § 4332, is procedural, designed to see that all federal agencies do in fact exercise the substantive discretion given them. Where "major federal actions significantly affecting the quality of the human environment" are contemplated, § 102(2)(C) requires agencies of the federal government to draft a "detailed statement" covering the impact of particular actions on the environment, the environmental costs which might be avoided, and alternative measures which might alter the cost-benefit ratio.

received from the Board of Commissioners and the Planning Commission of Carteret County.

It is significant that no federal, state, or local agency charged with expertise in these matters expressed any objection other than the minor matters above noted which were corrected by the action of the Corps. The record before the District Engineer included the findings of experts on navigation, marine fishery resources, estuary protection, disposition of dredged materials, beach vegetation, marine soils, air and water pollution, planning and zoning, and other matters.

Various comments were received from private organizations and individuals expressing adverse viewpoints. Generally, it is the Corps' normal procedure to refer these to the appropriate agency having that subject matter expertise. In this case, however, those agencies with such expertise had already responded to the public notice and, in so doing, had substantially rebutted most of such comments. Other comments, pertaining to local zoning authority, were referred to the Planning Board of Carteret County which expressed no opposition to the project.

On the basis of this administrative record, the Corps of Engineers determined that an environmental impact statement was not necessary since the granting of the permit would involve no major federal action significantly affecting the environment. This record, plus affidavits submitted by plaintiffs, was examined by the district court which subsequently determined that "the District Engineer and the Corps of Engineers . . . reached a reasonable decision in not requiring an impact statement before granting the permits in this case."[6]

■ Plaintiffs argue that an impact statement was required, nevertheless, since regulations issued by the Council on Environmental Quality suggests that a formal impact statement should be

prepared with respect to "proposed actions, the environmental impact of which is likely to be highly controversial." See Council on Environmental Quality, Statements on Proposed Federal Actions Affecting the Environment, Guidelines § 5(b), 36 Fed.Reg. 7724 (Apr. 23, 1971). We reject, however, the suggestion that "controversial" must necessarily be equated with opposition. The term should properly refer to cases where a substantial dispute exists as to the size, nature or effect of the major federal action rather than to the existence of opposition to a use. Otherwise, to require an impact statement whenever a threshold determination dispensing with one is likely to face a court challenge would surrender the determination to opponents of a federal action, no matter whether major or not, nor how insignificant its environmental effect might be. Hanly v. Kleindienst, 471 F.2d 823, 830 (2nd Cir. 1972). See Citizens for Reid State Park v. Laird, 336 F.Supp. 783 (D.Me. 1972).

■■ There can be little doubt that NEPA is a clear mandate to all federal agencies to give careful and informed consideration to environmental values in their decision making process. Calvert Cliffs' Coordinating Committee, Inc. v. United States Atomic Energy Commission, 146 U.S.App.D.C. 33, 449 F.2d 1109 (1971). The record before us now reveals, however, a wide-ranging, good-faith assessment by the Corps of Engineers of the potential environmental impact of the proposed project. We find no basis for any suggestions that the decision was arbitrary or reached without adequate consideration of environmental factors. Conservation Council v. Froehlke, 473 F.2d 664 (4th Cir. 1973).

### III

Appellants contend that the review of this project by the Corps of Engineers and other interested federal agencies prior to the issuance of the permit to

---

6. The plaintiffs did not ask for leave to present oral testimony, relying upon the administrative record and their affidavits.

proceed constitutes major federal action within the purview of the National Environmental Policy Act. Yet, as the district court found, for the purpose of the denial of the requested interlocutory injunction, the issuance of a permit in this particular case fails to meet the indicia which have been utilized by courts in determining the presence of major federal action within the intendment of NEPA.

With no attempt to limit the list, we note past findings of major federal action have involved projects financed in whole or in part by federal funds, e.g., Ely v. Velde, 451 F.2d 1130 (4th Cir. 1971) ($775,000 federal grant for construction of a correctional center); or projects designed or planned in part by a federal agency, e.g., Arlington Coalition v. Volpe, 458 F.2d 1323 (4th Cir.), cert. den. Fugate v. Arlington Coalition, 409 U.S. 1000, 93 S.Ct. 312, 34 L.Ed.2d 261 (1972) (six lane highway planned and financed in part by the federal government); or projects to be carried out under the auspices of a federal agency, e.g., Sierra Club v. Mason, 351 F.Supp. 419 (D.C.Conn.1972) (dredging activity under contract by the Corps of Engineers). At other times, courts have focused upon the qualitative impact upon the environment in order to determine whether federal action was major. E.g., Ely v. Velde, supra (location of correctional center in a "uniquely historical and architecturally significant rural community"); Izaak Walton League of America v. Schlesinger, 337 F.Supp. 287 (D.C.D.C.1971) (licensing of nuclear power plant).

This case meets none of those indicia. For example, the project in question is to be financed wholly from private sources. It has not been federally planned or designed. Moreover, the construction of the piers and the dredging of the marina are to be performed by a private contractor, not by the Corps of Engineers. The record now indicates that the effect of granting the permit will be isolated, yielding little or no impact outside the immediate area; no marshlands are involved; no beds of shellfish will be destroyed. In addition, it was stated in oral argument that Bogue Bank is already host to. seven commercial fishing piers [7] similar to the one in question, one located 3½ miles east of the Willis property, another 2 miles west. Thus, the Corps' action does not have the effect of introducing a previously non-existent use into the area. See *Hanly*, supra.

Although issuing a permit for such a pier is undoubtedly federal action, whether or not it is major federal action, whether or not it will have a significant effect on the human environment, and whether or not the Corps of Engineers abused its discretion are largely, or at least to a considerable extent, factual matters to which we should give due deference to the findings of the district court, especially at this preliminary stage of the litigation, when the ultimate facts are yet to be determined.

Because we find no improvident exercise of discretion by the district court, the refusal to grant the temporary restraining order and temporary injunction is

Affirmed.

CRAVEN, Circuit Judge (dissenting):

I cannot accept the theory of my Brethren that from the issuing of the permit in question by the Corps of Engineers, it is a "necessary inference" that the Corps made the proper determinations concerning whether an environmental impact statement was necessary. It can just as easily and logically be inferred that the district engineer, acting for the Corps, misconceived his function, or ignored the requirements of law, since there is nothing in the administrative record to indicate that he was even

---

7. No evidence of any breach of the banks or significant erosion caused by the existing piers was produced by plaintiffs, although it is patently the most relevant and material evidence and the easiest to obtain.

aware of his duty under 42 U.S.C. § 4332(2)(c) and Rule 11(c) to make specific determinations. No written findings concerning the necessity of an impact statement were ever filed. Even if the district engineer made such a determination he may have so determined for an insufficient reason. In short, there may have been noncompliance or incorrect compliance with the National Environmental Policy Act and the Corps of Engineers' own rules.

The majority opinion states that the regulations in force at the time the permit was issued did not specifically require a negative finding as to the necessity of an impact statement. Three days after the permit was issued, however, a regulation of the Corps of Engineers became effective, requiring the district engineer, if he determines that an environmental impact statement is not required, to make a written finding to that effect, setting forth his reasons therefor, and providing that the finding should become public knowledge. Reg.No. 1105–2–507, ¶¶ 4(b)(2) and 5(g)(2). 38 Fed.Reg.No. 70, pp. 9243–44 (April 12, 1973). Consequently, it seems to me that, as a minimum, the administrative record should be supplemented before the district court by the testimony of the district engineer. This is precisely what was authorized in Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 419, 91 S.Ct. 814, 28 L. Ed.2d 136 (1970), although in that case a change in circumstances obviated the need for formal findings. Indeed, I would conclude that under Thorpe v. Housing Authority, 393 U.S. 268, 281–282, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969), the district court, or we, should apply the new regulation to the instant case.

Finally, if it be assumed that the Corps of Engineers made a "finding," it seems to me that the Corps viewed the proposed construction of the fishing pier and marina as a "zoning" or land-use problem, rather than as an environmental one. I do not think the question readily yields to solution by label. We are told in oral argument that this will be the eighth fishing pier extending into the Atlantic within a distance of some 20 miles. I do not know how many fishing piers are too many, but I think that too many may substantially alter the environment of North Carolina's priceless Outer Banks. It is, of course, true that the issuance of a permit by the Corps to construct a boat dock on an inland waterway for a private homeowner is not major federal action requiring the preparation of an impact statement. But what about the 500th such permit, or the 10,000th one? At some point "zoning" and environmental impact merge. Ecology is largely a matter of land use.

We cannot tell from this record whether or not the construction of this pier and marina will increase the risk of an ocean breach of the Banks, but even if we assume that will not occur, there remains the issue I have adverted to: whether increasing commercial utilization of the Banks may at some point pass beyond "zoning" and effect significant environmental degradation of a unique national asset. The Corps's own regulations adopt what seems to me to be the proper test for determining when an environmental impact statement is required: whether the proposed action *could* have a significant adverse effect on the quality of the environment, not whether it *would* have such an effect. 37 Fed.Reg. 2525 (February 2, 1972).

Because I believe the construction of such a fishing pier and marina *could* adversely affect the environmental nature of the Outer Banks, I would reverse the refusal to issue a preliminary injunction and would stop the construction of the pier and marina pending a trial on the merits to determine the necessity for preparation of an impact statement.