CITY OF DETROIT and County of
Wayne, Appellants,

v.

The MURRAY CORPORATION OF
AMERICA, a Delaware corpora-
tion, Appellee,

and

United States of America,
Intervenor.

No. 12678.

United States Court of Appeals
Sixth Circuit.

June 16, 1956.

Thomas J. Foley, Detroit, Mich., Ger-
ald K. O'Brien, Hobart Taylor, Jr., Phil-
ip A. McHugh, Detroit, Mich., on brief,
for Wayne County.

Julius C. Pliskow, Detroit, Mich., Paul
T. Dwyer, Bert R. Sogge, Vance G. In-
galls, Detroit, Mich., on brief, for City of
Detroit.

Victor W. Klein, Detroit, Mich., Wm.
M. Saxton, Butzel, Eaman, Long, Gust &
Kennedy, Detroit, Mich., on brief, for
Murray Corp.

Lyle M. Turner, Washington, D. C.,
Charles K. Rice, Lee A. Jackson, Hilbert
P. Zarky, Erwin A. Goldstein, Washing-
ton, D. C., Jerome S. Hertz, Mount Rain-
ier, Md., Fred W. Kaess, John L. Owen,
Detroit, Mich., on brief, for the United
States.

Before ALLEN and MARTIN, Circuit
Judges, and STARR, District Judge.

MARTIN, Circuit Judge.

In three separate actions consolidated
on this appeal, brought by The Murray
Corporation of America in which the
United States of America intervened, the

District Court awarded summary judgments in favor of the plaintiff in the total amount of $76,748.47 against the City of Detroit covering personal property taxes illegally collected in two installments for the year 1952 and for $14,116.30 against the County of Wayne, Michigan, for personal property tax illegally collected.

■ The intervention of the United States was permitted for the reason that the Government claimed ownership of the personal property upon which the tax assessments were made by the City and the County respectively. Concededly, no genuine issue on any material fact was presented, and therefore summary judgment was the proper proceeding for disposition of the issues of law involved.

The assessment of more than $2,000,000.00 in controversy was made against The Murray Corporation of America on personal property in its possession under two letter sub-contracts respectively with "Kaiser" Corporation and "Wright" Corporation, each under and pursuant to letter prime contracts between the United States Government and Kaiser and Wright corporations respectively. These letter sub-contracts covered the manufacture of specified parts and assemblies required under the prime contracts for the United States Air Force for the national defense. These sub-contracts and amendments thereto were approved by a contracting officer of the United States Air Force in accordance with the requirements of the prime contract.

Included in these letter sub-contracts, by amendment, was a partial payment clause which, as stated by the District Judge, presents the nub of the present controversy. This clause in substance provided that upon the making of any partial payment, title to all parts, materials, inventories, work in process, and non-durable tools theretofore acquired or produced by the contractor for the performance of the contract and properly chargeable to the contract under sound accounting practices should *forthwith vest in the Government*; and title to all like property thereafter acquired or produced by the contractor for performance of the contract and properly chargeable as aforementioned should vest in the Government forthwith upon such acquisition or production.

The assessment date under Michigan law with which we are concerned was January 1, 1952, Comp.Laws Supp.1954, § 211.13. During 1951, the Murray Corporation upon its several requests, audited and approved by a contracting officer of the United States Air Force, received partial payments from Kaiser of more than $163,000.00 and from Curtis Wright (successor to Wright Aeronautical Corporation) of more than $510,000.00.

In his clear-cut opinion, District Judge Thornton analysed the respective positions of the contending parties. The important points made by Murray were that the taxes assessed were ad valorem taxes upon property and not privilege taxes assessed against the taxpayer; that property owned by the federal Government is immune from local ad valorem property taxes; that a federal question is presented for determination under federal and not under state law; that the partial payment clauses vesting title in the federal Government were fully authorized and effective; that under the partial payment clauses title to the property in question was vested in the United States on the assessment date, and that this is an *absolute* and not a bare lien or security title; that Murray is the real party in interest and so entitled to bring the actions; and that the equitable arguments advanced by the City and County have been entirely rejected by the Supreme Court of the United States.

The United States took substantially the same position and contends that the assessment was upon its property and therefore invalid under the federal Constitution, art. 6, cl. 2.

The position of the City of Detroit was in effect that the partial payment and transfer of title clause was not authorized nor in conformity with federal statutes; that the inclusion of the clause would not defeat an ad valorem tax on

personal property in the hands of an independent sub-contractor acquired in the course of carrying out the provisions of a sub-contract for defense production; and that the course of action and dealing with the property was inconsistent with the vesting of absolute title in the United States and the Government therefore acquired merely a lien or title for security purposes leaving Murray vested with an equitable title to the personal property subject to an ad valorem property tax.

■ The County of Wayne took the same position assumed by the City of Detroit with the added contention, which is clearly not meritorious, that the Murray Corporation is not the real party in interest.

■ We agree with the finding of the District Court that the partial payment clauses are not invalid for want of authority or for non-conformity with the federal statutes. We concur also in the conclusion of the trial court that "a reading of the Partial Payment Clause leaves no doubt that, upon the making of a partial payment, title to parts, materials, etc., acquired for the performance of the contract vests in the United States Government as does title to all property subsequently acquired for the performance of the contract."

Among the numerous decisions of the Supreme Court of the United States upon the question of the immunity of Government property from state taxation we think United States v. County of Allegheny, 322 U.S. 174, 64 S.Ct. 908, 88 L. Ed. 1209, is controlling authority in the instant case. In our judgment, the facts of that case are not in any material aspect distinguishable from the facts encountered here. In the Allegheny case, the United States made a contract with a machine company in Pennsylvania for the manufacture of large field guns. The private corporation's plant though used for the manufacture of heavy machinery was not equipped for the manufacture of ordnance. It was agreed that certain additional machinery required for the work should be furnished at Government expense and should remain property of the United States. In performance of the agreement the contractor manufactured one machine, the Government furnished eight gun-boring lathes and the rest of the needed equipment was purchased by the contractor from other machine tool manufacturers. The machinery bought or built by the manufacturer was inspected and accepted on behalf of the United States which compensated the contractor therefor. The contract provided that the title to all such property should vest in the Government upon delivery at the site of work and upon inspection and acceptance. The Government leased the equipment to the contractor during the period for which the guns were manufactured. The machinery was bolted on concrete foundations in the contractor's plant on real estate owned by it and could be removed without damage to the building. The Supreme Court of Pennsylvania upheld the assessment by Allegheny County upon the ground that under the state law regardless of who held title to it, the machinery constituted a part of the contractor's mill for purposes of assessment and had been properly assessed as real estate. Both the contractor and the United States, which had intervened in the state litigation, appealed to the Supreme Court of the United States. That highest tribunal held that the substance of the procedure by the state assessors was to lay an ad valorem general property tax on property owned by the United States and that the Government-owned property, to the full extent of its interests therein, is immune from taxation, either as against the Government itself or as against one holding the property as bailee. The judgment of the State Supreme Court was reversed as violative of the federal Constitution.

Upon analysis, we think that substantially all of the arguments advanced by appellant were rejected by the Supreme Court in the Allegheny case. The Supreme Court declared that the principle is unshaken, indeed rarely questioned, that "possessions, institutions, and ac-

tivities of the Federal Government itself in the absence of express congressional consent are not subject to any form of state taxation." 322 U.S. 177, 64 S.Ct. 911.

In the earlier case of United States v. Ansonia Brass & Copper Company, 218 U.S. 452, 31 S.Ct. 49, 54 L.Ed. 1107, the Supreme Court had held that vessels in course of construction for the United States, the title to which under the contract vests in the Government as fast as constructed, become instrumentalities of the Government and for reasons of public policy cannot be seized under state laws to answer private claims. In the later case of Kern-Limerick, Inc., v. Scurlock, 347 U.S. 110, 74 S.Ct. 403, 98 L.Ed. 546, the Supreme Court distinguished State of Alabama v. King & Boozer, 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3, upon the ground that under the contract involved in the Kern-Limerick case the United States was the real purchaser. The Arkansas gross receipts tax law was held unconstitutional as applied to transactions whereby private contractors procured in Arkansas two tractors for use in constructing a naval ammunition depot for the United States under a cost-plus-fixed-fee contract entered into with the Navy Department which provided that in procuring needed articles, the contractor should act as purchasing agent for the Government, title to the articles purchased should pass directly from the vendor to the Government and the Government should be directly responsible to the vendor for payment of the purchase price.

We think that reliance of the City of Detroit upon the following cited authorities is not well placed: Esso Standard Oil Co. v. Evans, 345 U.S. 495, 73 S.Ct. 800, 97 L.Ed. 1174; James v. Dravo Contracting Co., 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155; Graves v. New York, 306 U.S. 466, 59 S.Ct. 595, 83 L.Ed. 927; and Helvering v. Mountain Producers Corporation, 303 U.S. 376, 58 S.Ct. 623, 82 L.Ed. 907. All of these cases involve excise or privilege taxes, where a privilege exercised by the contractor was taxed to him although the economic burden was passed along by him to the Government. The incidence of the privilege taxes was upon the contractor while in the case at bar an ad valorem property tax had been assessed upon property the title to which is vested in the United States and the incidence of the tax is directly and solely upon the property assessed.

In the Esso Standard Oil Company case the Government had *agreed* to assume liability of all estate taxes in connection with a storage contract made by it with a private corporation. The Allegheny County case was thus distinguished:

"Allegheny County, however, was quite different. The United States had leased certain machinery to the Mesta Machine Company. In imposing the state ad valorem property tax, Pennsylvania included in the Mesta assessment both the privately owned land and buildings, and the government machinery. * * * So the value of the federal property was, in part, the measure of the tax. We held the substance of this procedure was 'to lay an ad valorem general property tax on property owned by the United States', * * * and therefore invalid. Our holding was not 'dependent upon the ultimate resting place of the economic burden of the tax.' * * *

"This tax was imposed because Esso stored gasoline. It is not, as the Allegheny County tax was, based on the worth of the government property. Instead, the amount collected is graduated in accordance with the exercise of Esso's privilege to engage in such operations; so it is not 'on' the federal property as was Pennsylvania's." 345 U.S. 499, 73 S.Ct. 802.

In our judgment S. R. A., Inc., v. Minnesota, 327 U.S. 558, 561, 66 S.Ct. 749, 752, 90 L.Ed. 851, is not apposite for the reason that in that case the contract involved transferred the equity in the land to the purchaser, leaving in the United

States only a legal title as security, rendering it the equivalent of a mortgage. The opinion pointed out that no state has power to tax property of the United States against its will; and stated that "under an implied Constitutional immunity, its property and operations must be exempt from state control in tax, as in other matters." M'Culloch v. Maryland, 4 Wheat. 316, 425, 4 L.Ed. 579; Van Brocklin v. Tennessee, 117 U.S. 151, 177, 6 S.Ct. 670, 29 L.Ed. 845; and United States v. Allegheny County, 322 U.S. 174, 176–177, 64 S.Ct. 908, 88 L.Ed. 1209, were cited.

The several judgments of the District Court from which the appeals were taken in the instant controversy are affirmed.