No. 76–1030. MINNESOTA *v.* ALEXANDER, SECRETARY OF THE ARMY, ET AL. Appeal from C. A. 8th Cir. dismissed for want of jurisdiction. Treating the papers whereon the appeal was taken as a petition for writ of certiorari, certiorari denied.

MR. JUSTICE STEVENS, with whom MR. JUSTICE MARSHALL and MR. JUSTICE REHNQUIST join, dissenting.

In this case, the Court of Appeals held that dredging by the Army Corps of Engineers is exempt from state water-pollution regulations. 543 F. 2d 1198 (CA8 1976). The Court today refuses to review this ruling despite the fact that the case is here on appeal, and may well be within our mandatory jurisdiction.[1] The case deserves plenary review

---

[1] Our mandatory jurisdiction includes cases in which a court of appeals holds a state statute "invalid as repugnant to the Constitution, treaties or laws of the United States . . . ." 28 U. S. C. § 1254 (2). The Secretary

because of its practical importance and because of the likeli-hood that error has been committed.

The general rule, of course, is that federal agencies are immune from state regulation, but this immunity may be waived by Congress. See *EPA* v. *California ex rel. State Water Resources Control Board,* 426 U. S. 200. It appears that Congress has made such a waiver in § 313 of the Federal Water Pollution Control Act, as added, 86 Stat. 875, 33 U. S. C. § 1323 (1970 ed., Supp. V). Section 313 provides, in no uncertain terms, that:

> "Each department, agency, or instrumentality of the executive, legislative, and judicial branches of the Federal Government . . . shall comply with Federal, State, inter-state, and local requirements . . . ."

Congress was cautious indeed in allowing exceptions, as shown by the remainder of § 313. Federal agencies may be exempted only by the President himself, and only if he finds the exemption to be in the "paramount interest of the United States." Even then, the exemption lasts only one year unless renewed by the President, and he must report each exemption

---

of the Army concedes that "[b]y holding that the federal statute did not waive the traditional immunity of the Corps of Engineers from state regulation, the court implicitly held that the purported reach of state laws over the Corps' dredging activities was invalid under the Supremacy Clause . . . ." Motion to Dismiss or Affirm 5. In *City of Detroit* v. *Murray Corp.,* 355 U. S. 489, the Court of Appeals, 234 F. 2d 380, had ruled that, as applied, a state taxing statute invaded the Federal Govern-ment's immunity from state taxation. This Court postponed the question of appellate jurisdiction to the hearing on the merits, but then held with-out explanation that an appeal was proper. 355 U. S., at 492. A similar result should apply to a holding that a state statute invaded the Federal Government's immunity from unconsented state regulation. It is arguable, of course, that our mandatory appellate jurisdiction is defeated by the Court of Appeals' failure to make express its invalidation of the statute as applied to the Corps, but we clearly have power to review the case on writ of certiorari.

to Congress "together with his reason for granting such exemption."

Despite the evident intent of Congress to allow even temporary exemptions only under extraordinary circumstances, the Court of Appeals found an implied, permanent exemption in § 404 of the Act, 86 Stat. 884, 33 U. S. C. § 1344 (1970 ed., Supp. V).[2] 543 F. 2d, at 1202. Section 404 simply provides that dredging permits are issued by the Army Corps of Engineers, rather than the Environmental Protection Agency. It says nothing about any exemption from state water-pollution regulation. Indeed, § 404 does not distinguish between dredging by the Corps and dredging by private industry; private dredgers are concededly subject to state pollution require-

---

[2] Section 404 states:

"(a) The Secretary of the Army, acting through the Chief of Engineers, may issue permits, after notice and opportunity for public hearings for the discharge of dredged or fill material into the navigable waters at specified disposal sites.

"(b) Subject to subsection (c) of this section, each such disposal site shall be specified for each such permit by the Secretary of the Army (1) through the application of guidelines developed by the Administrator in conjunction with the Secretary of the Army, which guidelines shall be based upon criteria comparable to the criteria applicable to the territorial seas, the contiguous zone, and the ocean under section 403 (c), and (2) in any case where such guidelines under clause (1) alone would prohibit the specification of a site, through the application additionally of the economic impact of the site on navigation and anchorage.

"(c) The Administrator is authorized to prohibit the specification (including the withdrawal of specification) of any defined area as a disposal site, and he is authorized to deny or restrict the use of any defined area for specification (including the withdrawal of specification) as a disposal site, whenever he determines, after notice and opportunity for public hearings, that the discharge of such materials into such area will have an unacceptable adverse effect on municipal water supplies, shellfish beds and fishery areas (including spawning and breeding areas), wildlife, or recreational areas. Before making such determination, the Administrator shall consult with the Secretary of the Army. The Administrator shall set forth in writing and make public his findings and his reasons for making any determination under this subsection." 86 Stat. 884.

ments (Motion to Dismiss or Affirm 9, and n. 10); and Congress expected that "the disposal activities of private dredgers and the Corps of Engineers will be treated similarly." S. Conf. Rep. No. 92–1236, p. 142 (1972); see also H. R. Rep. No. 92–911, p. 130 (1972).

In *State Water Resources Control Bd.,* the Court emphasized that "[f]ederal installations are subject to state regulation only when and to the extent that congressional authorization is clear and unambiguous." 426 U. S., at 211. Perhaps further investigation will disclose that the congressional authorization here is not so "clear and unambiguous" as it now appears to be. Even giving all benefit of the doubt to the Court of Appeals, however, the correctness of its holding is far from apparent.

This case has more than theoretical importance. According to the complaint, the Corps dredges some two million cubic yards of sediment from the Mississippi River alone, and deposits about half that amount in Minnesota. App. A–4. These activities have allegedly caused "severe degradation of the quality of the waters of [that] state." *Id.,* at A–2. Other States, too, are concerned—briefs of *amici curiae* urging reversal have been filed on behalf of California, Hawaii, Idaho, Missouri, Washington, and Wisconsin.

I would order the case set for oral argument, postponing until then the issue whether the case should be taken on appeal or by writ of certiorari.