**TOWNSHIP OF LONG BEACH,**
Plaintiff,

v.

**CITY OF NEW YORK et al.,**
Defendants.

Civ. No. 76–1930.

United States District Court,
D. New Jersey.

Jan. 24, 1978.

**1206**

Shackleton, Hazeltine, Zlotkin & Dasti by Richard J. Shackleton, Ship Bottom, N. J., for plaintiff.

Philip R. Kaufman, Spotswood, N. J., W. Bernard Richland, Corp. Counsel, New York City, for defendant City of New York.

Robert J. Del Tufo, U. S. Atty., Trenton, N. J. by Carl R. Woodward, III, Newark, N. J., for defendants Environmental Protection Agency and Russell E. Train, Administrator of the Environmental Protection Agency.

## MEMORANDUM

CLARKSON S. FISHER, District Judge.

The controversy here presented is a familiar and continuing problem in the New Jersey shore area. It involves the dumping of garbage and sludge by the City of New York into the Hudson River and the Atlantic Ocean. The alleged result of such acts is the sludge which has settled on the ocean floor and spread in some areas to the beaches and resulted in a massive fish-kill which has occurred off the New Jersey coast line. The Township of Long Beach brings this action for injunctive and declaratory relief against the City of New York (hereinafter City), the Environmental Protection Agency (hereinafter EPA) and the Administrator of the EPA.

Jurisdiction of this Court is invoked pursuant to the Federal Water Pollution Control Act (hereinafter FWPCA), 33 U.S.C. § 1365, and the Marine Protection, Research and Sanctuaries Act of 1972 (hereinafter MPRSA), 33 U.S.C. § 1415. Jurisdiction is also grounded upon the following general jurisdictional provisions: 28 U.S.C. §§ 1331(a), 1332(a)(1) and 1337.

Plaintiff alleges that the City's discharge of waste into the Hudson River and the federal defendants' failure to establish a comprehensive program preventing, reducing or eliminating the pollution of the navigable waters of the Hudson River and the Atlantic Ocean are violative of the FWPCA, 33 U.S.C. § 1251 *et seq.* It also is contended that the issuance of certain permits by the federal defendants to the City allowing dumping violates the MPRSA, 33 U.S.C. § 1401 *et seq.*, in that the City is allowed to dump material violating applicable water quality standards for the Hudson River and Atlantic Ocean and that such dumping has adversely affected both human health and welfare and marine environmental and ecological systems. It is further stated that the City has not complied with the permits, thereby violating the MPRSA. Plaintiff also charges the City with a violation of Section 13 of the Rivers and Harbors Act of 1899, 33 U.S.C. § 407, in that the City has discharged refuse other than that flowing from streets and sewers and passing therefrom in a liquid state into the Hudson River and the Atlantic Ocean. It is further contended that the City, by its acts, and the federal defendants, by their failure to act, have violated the rights of the citizens of the plaintiff which emanate from the Fifth, Ninth, and Fourteenth Amendments to the United States Constitution and have created and are maintaining a public nuisance.

Motions for dismissal based on various jurisdictional grounds and for failure to state a claim upon which relief can be granted and for summary judgment have been made by the defendants. The federal defendants have also moved for dismissal based upon improper venue,[1] the

---

**1.** Plaintiff states that the federal defendants waived their right to raise the improper venue defense by their failure to file a timely pre-answer motion and their failure to file an answer preserving the defense within the 60-day time limitation of F.R.Civ.P. 12(a). Service of the complaint and summons was effected on the federal defendants on October 22, 1976. These defendants filed their answer on January 19, 1977.

City apparently conceding that it waived the right to raise such a defense. *See* F.R. Civ.P. 12(h).[2]

Although jurisdictional questions normally should be addressed by the Court before the issue of venue, I decline to do so. There is no question that there is a split of authority among the federal courts with respect to many of the jurisdictional and standing issues presented herein. If this action is properly before a federal court in one of the districts of New York, I do not believe that I should decide these questions and thereby pronounce the law of the case in the event that such a court would decide the issues differently. I will, therefore, proceed to address the question of venue.[3]

■ It first is contended that the general venue statute, 28 U.S.C. § 1391(b),[4] conclusively limits venue to either the Eastern or Southern District of New York. This belief is based on the view that the claim arose in New York and, obviously, the City does not reside in New Jersey. Although admitting that the venue language is permissive, a similar argument is made with respect to the venue provision of the MPRSA, 33 U.S.C. § 1415(g)(3)(A).[5] This argument is rejected. It seems patently obvious that the claim upon which this action is based can be considered to have arisen in New Jersey as that certainly is the place where the effect of the alleged violations have weighed most heavily and it is the situs at which the injury occurred. *See generally Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.,* 291 F.Supp. 252 (E.D.Pa.1968).

■ The venue provision of the FWPCA, 33 U.S.C. § 1365(c)(1), however, causes this Court to pause. That section provides that "[a]ny action respecting a violation by a discharge source of an effluent standard or limitation or an order respecting such standard or limitation may be brought under this section only in the judicial district in which such source is located." Plaintiff argues that this provision does not control the action brought against the federal defendants. Plaintiff points to the provision which allows citizen suits, which reads as follows:

---

The defendants contend that plaintiff failed to serve the Attorney General of the United States as required by F.R.Civ.P. 4(d)(4), consequently never perfecting service and causing the 60-day limitation never to have commenced running until the voluntary appearance of the defendants on January 19, 1977.

F.R.Civ.P. 4(d)(4) does not appear to be applicable, however, since this action is not one against the United States. Instead, F.R.Civ.P. 4(d)(5) applies. That rule requires service upon the defendant officer or agency of the United States, which was accomplished.

I reject, however, plaintiff's proposition that the federal defendants ·waived their right to object on the ground of improper venue. *Granger v. Kemm, Inc.,* 250 F.Supp. 644 (E.D.Pa. 1966), upon which plaintiff relies, involved a situation wherein the defendant filed no answer, but simply brought a motion objecting to venue 55 days after the complaint was served. In the present suit, the defense was properly preserved in the answer. Plaintiff in this case never instructed the clerk to enter default and in fact later consented to an amendment of the answer.

2. The federal defendants, presumably on behalf of the City, contend that the venue provision of the FWPCA, 33 U.S.C. § 1365(c)(1), is jurisdictional and therefore nonwaivable. Objection to venue is "a privilege personal to each defendant" and cannot be raised by one defendant on behalf of another. 1 Moore, Federal Practice ¶ 0.146[6] at 1669–71. Even if this were not so, I believe that any rights obtained under this venue provision are waivable.

3. Plaintiff argues that because a pre-answer motion based upon improper venue was not made, this Court should not, at this time, consider such objections. The federal defendants preserved this defense in their answer. F.R. Civ.P. 12(d) allows the court to have a preliminary hearing on a motion based upon a 12(b) defense before the trial even though no pre-answer motion was made if the defense is properly preserved. Not to hear such motions until the trial could cause a great waste of both the court's and the litigants' time. Accordingly, I will now consider this motion.

4. 28 U.S.C. § 1391(b) provides as follows: "A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law."

5. 33 U.S.C. § 1415(g)(3)(A) provides as follows: "Any suit under this subsection may be brought in the judicial district in which the violation occurs."

(a) Except as provided in subsection (b) of this section, any citizen may commence a civil action on his own behalf—

(1) against any person . . . who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or

(2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an effluent standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may be, and to apply any appropriate civil penalties under section 1319(d) of this title.

33 U.S.C. § 1365. It is contended that a plain reading of the venue provision establishes that it encompasses only an "action respecting a violation by a discharge source of an effluent standard or limitation or an order respecting such standard or limitation." 33 U.S.C. § 1365(c)(1).

No case law addressing this problem has been found. The Court must agree, however, that the venue provision appears to apply only to the action described in 33 U.S.C. § 1365(a)(1). The venue objection is made on behalf of the federal defendants. The claim against them is based on the action for which provision is made in 33 U.S.C. § 1365(a)(2).

The reason behind the application of the venue provision to the former action is obvious. It would be burdensome to require the violator to defend itself in various forums other than that where the source is located. This reason is not, however, applicable when the suit is against the federal agency and the administrator thereof. I therefore concur with plaintiff's interpretation of the statute and hold that 33 U.S.C. § 1365(c)(1) does not control an action brought pursuant

to 33 U.S.C. § 1365(a)(2). Accordingly, I deny the federal defendants' motion for dismissal pursuant to F.R.Civ.P. 12(b)(3) for improper venue.

■■■ Defendants contend that this Court lacks subject matter jurisdiction over that portion of this suit which is based on the FWPCA because of plaintiff's failure to comply with 33 U.S.C. § 1365(b), which reads as follows:

(b) No action may be commenced—

(1) under subsection (a)(1) of this section—

(A) prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order, or

(B) if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right.

(2) under subsection (a)(2) of this section prior to sixty days after the plaintiff has given notice of such action to the Administrator,

except that such action may be brought immediately after such notification in the case of an action under this section respecting a violation of sections 1316 and 1317(a) of this title. Notice under this subsection shall be given in such manner as the Administrator shall prescribe by regulation.

Plaintiff states that jurisdiction is conferred upon the Court by 28 U.S.C. § 1331 and 33 U.S.C. § 1365(e). This latter statute, which is part of the FWPCA, provides that "[n]othing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any effluent standard or limitation or to seek any other relief (including relief against the Administrator or a State agency)."

A number of cases supporting plaintiff's position hold that compliance with the notice provision of the FWPCA is not the exclusive way in which a suit based on alleged violations of the FWPCA can be properly brought before the Court. These cases hold that jurisdiction over the subject matter can be obtained if jurisdiction is alleged to arise under 28 U.S.C. § 1331(a).[6] *See Natural Resources Defense Council, Inc. v. Callaway,* 524 F.2d 79, 83–84 & n. 4, 94 (2d Cir. 1975); *Natural Resources Defense Council, Inc. v. Train,* 166 U.S.App. D.C. 312, 510 F.2d 692, 698–703 (1975); *Conservation Soc'y of So. Vt., Inc. v. Secretary of Transp.,* 508 F.2d 927, 938–39 & n. 62 (2d Cir. 1974), *cert. granted, judgment vacated & case remanded on other grounds,* 423 U.S. 809, 96 S.Ct. 19, 46 L.Ed.2d 29 (1975); *Minnesota v. Callaway,* 401 F.Supp. 524, 526–27 (D.Minn.1975), *rev'd on other grounds sub nom. Minnesota v. Hoffman,* 543 F.2d 1198 (8th Cir. 1976), *appeal dismissed & cert. denied sub nom. Minnesota v. Alexander,* 430 U.S. 977, 97 S.Ct. 1672, 52 L.Ed.2d 373 (1977).[7] It is reasoned that such a result gives effect to 33 U.S.C. § 1365(e).

Defendants rely on *Massachusetts v. United States Veterans Administration,* 541 F.2d 119 (1st Cir. 1976).[8] Although that case appears to stand for the proposition that the notice provisions of the FWPCA must be complied with in order to confer jurisdiction on this Court to hear a claim based upon the FWPCA, the case is distinguishable. There the court affirmed the dismissal by the district court which was based on failure to comply with the notice requirements. The plaintiff then argued that the court had jurisdiction pursuant to 28 U.S.C. § 1331(a) over its claim sounding in the federal common law of public nuisance. The court found that

[t]here are several significant legal problems with the [plaintiff's] theory— any one of which might be dispositive. First, the allegations of nuisance embodied in the complaint are founded on a violation of the FWPCA, and not upon unreasonable damage to the resources of the [plaintiff] independent of the Act. There is, at present, a significant debate whether causes of action dependent upon violations of the FWPCA can be asserted under federal question jurisdiction, 28 U.S.C. § 1331(a), rather than under grants of jurisdiction expressly provided in the Act.

*Id.* at 122. The court did "not address these difficult issues, however, because there is a legal bar which clearly precludes the maintenance of this suit under the [plaintiff's] theory: sovereign immunity." *Id.* at 123. The court concluded that Congress had

---

**6.** The jurisdictional amount is satisfied since "[t]he considerable interests involved in the purity of interstate waters would seem to put beyond question the jurisdictional amount provided in § 1331(a)." *Illinois v. Milwaukee,* 406 U.S. 91, 98, 92 S.Ct. 1385, 1390, 31 L.Ed.2d 712 (1972). *Accord, Minnesota v. Callaway,* 401 F.Supp. 524, 527–28 (D.Minn.1975), *rev'd on other grounds sub nom. Minnesota v. Hoffman,* 543 F.2d 1198 (8th Cir. 1976), *appeal dismissed and cert. denied sub nom. Minnesota v. Alexander,* 430 U.S. 977, 97 S.Ct. 1672, 52 L.Ed.2d 373 (1977).

**7.** Some of these cases hold that jurisdiction can also be based upon the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* In *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), however, it was held that the Administrative Procedure Act is not an independent grant of jurisdiction. *Accord, Chaudoin v. Atkinson,* 494 F.2d 1323, 1328 (3d Cir. 1974).

**8.** Defendants also rely on *Bethlehem Steel Corp. v. Train,* 544 F.2d 657 (3d Cir. 1976), *cert.*

*denied sub nom. Bethlehem Steel Corp. v. Quarles,* 430 U.S. 975, 97 S.Ct. 1666, 52 L.Ed.2d 369 (1977). In that case, the court, while discussing the question of mootness, noted that "a citizen must give the EPA advance notice of his intention to sue." *Id.* at 660 (footnote omitted). This statement was dictum and was made without any analysis or even mention of the relevant case law. Accordingly, I do not find this language binding.

Defendants' reliance on *Loveladies Property Owners Ass'n v. Raab,* 430 F.Supp. 276 (D.N.J. 1975), *aff'd mem.* 547 F.2d 1162 (3d Cir. 1976), *cert. denied,* 432 U.S. 906, 97 S.Ct. 2949, 53 L.Ed.2d 1077 (1977), is also misplaced. Although the complaint in that case was dismissed for failure to comply with the notice provision, it was specifically noted that the plaintiff therein did not plead jurisdiction based on 28 U.S.C. § 1331(a) and that, moreover, the jurisdictional amount probably would not have been satisfied. *See* 430 F.Supp. at 281 & n. 5.

waived immunity only as to suits brought under the FWPCA and as that cause of action was unavailable to the plaintiff, the suit based on the federal common law of public nuisance was barred. The court thus never directly addressed the question of a suit brought under 33 U.S.C. § 1365(e) and 28 U.S.C. § 1331(a). In fact, in a later decision by a district court in the First Circuit, it appeared to be assumed that jurisdiction could be grounded upon 28 U.S.C. § 1331(a) through the use of 33 U.S.C. § 1365(e). *Save Our Sound Fisheries Ass'n v. Callaway,* 429 F.Supp. 1136, 1140–41, 1143 n. 10, (D.R.I.1977).

I concur with the reasoning of the Second and District of Columbia Circuits and find that plaintiff has properly grounded jurisdiction on 28 U.S.C. § 1331(a).[9]

■ The federal defendants argue that even if jurisdiction is properly based upon 28 U.S.C. § 1331(a), the FWPCA action is barred by sovereign immunity. It is contended that Congress only intended to waive the immunity bar when there was compliance with the notice provision. I reject this argument and find that the action is not barred by sovereign immunity since "it is clear from the language of [the FWPCA] and its legislative history that Congress intended to waive sovereign immunity as to any action brought to enforce the terms of the [FWPCA]." *Minnesota v. Callaway, supra* at 528.

**9.** In view of this holding, it is not necessary to address the substantial or constructive compliance theory proffered by the plaintiff. It is interesting to note, however, that such a theory has been approved when the giving of notice would be futile, *see Massachusetts v. United States Veterans Administration,* 541 F.2d 119, 121–22 (1st Cir. 1976); *Natural Resources Defense Council v. Callaway,* 524 F.2d 79, 84 n. 4 (2d Cir. 1975); *Save Our Sound Fisheries Ass'n v. Callaway,* 429 F.Supp. 1136, 1142–45 (D.R.I. 1977), or when the notice defect is cured by supplemental pleadings, *see Massachusetts v. United States Veterans Administration, supra* at 121; *Montgomery Environmental Coalition v. Fri,* 366 F.Supp. 261, 264–66 (D.D.C.1973).

Plaintiff states that it has alleged violations of the FWPCA based on 33 U.S.C. §§ 1316 and 1317(a), jurisdiction of which is not in any way premised on a 60-day notice requirement. In-

■ It also is posited that this Court lacks subject matter jurisdiction because the Administrator is diligently prosecuting a civil action against the City for violations of the FWPCA. The FWPCA provides that

(b) No action may be commenced—

(1) under subsection (a)(1) of this section—

(A) . . .

(B) if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right.

33 U.S.C. § 1365(b). This statute does not preclude the FWPCA action against the federal defendants because that claim is based upon 33 U.S.C. § 1365(a)(2). Furthermore, the action initiated by the Administrator was filed after this complaint. Therefore, no suit was commenced or being diligently prosecuted at the time the present action was filed. The statute thus does not preclude the exercise of jurisdiction by this Court.

■ The citizen suit provisions of the FWPCA are identical in all relevant respects to those of the MPRSA. *Compare* 33 U.S.C. § 1365(a), (b) and (e) *with* 33 U.S.C. § 1415(g).[10] Accordingly, I find that this

stead, an action based upon violations of these sections may be brought immediately upon notification. *See* 33 U.S.C. § 1365(b). Defendants respond by stating that the complaint does not properly allege violations of these provisions and thus conclude that compliance with the 60-day notice requirement is mandatory. Due to the holding that this Court has jurisdiction over the FWPCA claims even in the absence of the 60-day notice, it is not necessary to either address or resolve this controversy.

**10.** 33 U.S.C. § 1415(g) provides as follows:

(g)(1) Except as provided in paragraph (2) of this subsection any person may commence a civil suit on his own behalf to enjoin any person, including the United States and any other governmental instrumentality or agency (to the extent permitted by the eleventh amendment to the Constitution), who is alleged to be in violation of any prohibition,

Court has jurisdiction over the claims based upon the MPRSA and that such action against the federal defendants is not barred by sovereign immunity.

 Defendants contend that plaintiff lacks standing to bring an action predicated upon section 13 of the Rivers and Harbors Act of 1899,[11] 33 U.S.C. § 407, because the enforcement of that Act is specifically delegated to the United States, see 33 U.S.C. § 413, and there is no implied private right of action emanating therefrom. *See, e. g., Connecticut Action Now, Inc. v. Roberts Plating Co.,* 457 F.2d 81 (2d Cir. 1972) (suit expressly brought on behalf of the general public); *Loveladies Property Owners Ass'n v. Raab,* 430 F.2d 276, 281 (D.N.J.1975), *aff'd mem.* 547 F.2d 1162 (3d Cir. 1976), *cert. denied,* 432 U.S. 906, 97 S.Ct. 2945, 53 L.Ed.2d 1077 (1977); *Parsell v. Shell Oil Co.,* 421 F.Supp. 1275, 1277–80 (D.Conn.1976); *Burgess v. M/V Tamano,* 373 F.Supp. 839, 844–45 (D.Maine 1974); *Bass Anglers Sportsman's Soc'y v. Scholze Tannery, Inc.,*

329 F.Supp. 339 (E.D.Tenn.1971); *Bass Anglers Sportsman's Soc'y v. U. S. Plywood-Champion Papers, Inc.,* 324 F.Supp. 302 (S.D.Tex.1971); *Bass Angler Sportsman Soc'y v. United States Steel Corp.,* 324 F.Supp. 412, 416 (U.S.D.C.), *aff'd per curiam sub nom. Bass Anglers Sportsman Soc'y v. Koppers Co.,* 447 F.2d 1304 (5th Cir. 1971).[12] Conceding that under normal circumstances no private right of action arises pursuant to this Act, plaintiff, nevertheless, attempts to distinguish these cases by stating that none of them involved a situation wherein the defendant was an agency of the federal government. Plaintiff then proceeds to rely on *Natural Resources Defense Council, Inc. v. Grant,* 355 F.Supp. 280 (E.D.N.C.1973), wherein the court held that a private person had standing to bring an action pursuant to section 13 of the Refuse Act, 33 U.S.C. § 407. The court therein reasoned that since the defendants were represented by the same office that was delegated the authority to enforce the

limitation, criterion, or permit established or issued by or under this subchapter. The district courts shall have jurisdiction, without regard to the amount in controversy, or the citizenship of the parties, to enforce such prohibition, limitation, criterion, or permit, as the case may be.

(2) No action may be commenced—

(A) prior to sixty days after notice of the violation has been given to the Administrator or to the Secretary, and to any alleged violator of the prohibition, limitation, criterion, or permit; or

(B) if the Attorney General has commenced and is diligently prosecuting a civil action in a court of the United States to require compliance with the prohibition, limitation, criterion, or permit; or

(C) if the Administrator has commenced action to impose a penalty pursuant to subsection (a) of this section, or if the Administrator, or the Secretary, has initiated permit revocation or suspension proceedings under subsection (f) of this section; or

(D) if the United States has commenced and is diligently prosecuting a criminal action in a court of the United States or a State to redress a violation of this subchapter.

(3)(A) Any suit under this subsection may be brought in the judicial district in which the violation occurs.

(B) In any such suit under this subsection in which the United States is not a party, the Attorney General, at the request of the Administrator or the Secretary, may intervene

on behalf of the United States as a matter of right.

(4) The court, in issuing any final order in any suit brought pursuant to paragraph (1) of this subsection may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate.

(5) The injunctive relief provided by this subsection shall not restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any standard or limitation or to seek any other relief (including relief against the Administrator, the Secretary, or a State agency).

11. The Rivers and Harbors Act of 1899 will hereinafter be cited as The Refuse Act.

12. In the following cases it was held that qui tam actions to recover penalties for discharge of refuse matter into navigable waters are not permitted. *Hughes v. Ranger Fuel Corp.,* 467 F.2d 6, 8 n. 1 (4th Cir. 1972); *Jacklovich v. Interlake, Inc.,* 458 F.2d 923, 927 (7th Cir. 1972); *Connecticut Action Now, Inc. v. Roberts Plating Co.,* 457 F.2d 81, 83–86 (2d Cir. 1972); *Bass Angler Sportsman Soc'y v. United States Steel Corp.,* 324 F.Supp. 412, 415–16 (U.S.D.C.) *aff'd per curiam sub nom. Bass Anglers Sportsman Soc'y v. Koppers Co.,* 447 F.2d 1304 (5th Cir. 1971).

Refuse Act, the plaintiffs should be allowed to enforce it and seek injunctive relief as private attorneys general. *Accord, Illinois v. Hoffman,* 425 F.Supp. 71, 76 (S.D.Ill. 1977). The cases relied upon by the court in reaching that decision, however, did not involve section 13, but, rather, involved other sections of the Refuse Act.[13] *See Parsell v. Shell Oil Co., supra* at 1277 & n. 4.

Furthermore, a federal agency was one of the defendants in the following cases which held that there was no private right of action under section 13 of the Refuse Act, 33 U.S.C. § 407. *Bass Anglers Sportsman's Soc'y v. Scholze Tannery, Inc., supra* at 342; *Bass Anglers Sportsman's Soc'y v. U. S. Plywood-Champion Papers, Inc., supra* at 306–07; *Bass Angler Sportsman Soc'y v. United States Steel Corp., supra* at 416.

Finally, in *Red Star Towing & Transp. Co. v. Department of Transp.,* 423 F.2d 104, 105 (3d Cir. 1970), the Third Circuit stated that the Refuse Act "did not . . . create any civil cause of action in favor of private parties injured by any violation of the Act." *Accord, Loveladies Property Owners Ass'n v. Raab, supra* at 281. In fact, a number of other courts have construed that decision as holding that there is no right of private action under any of the provisions of the Refuse Act. *Sierra Club v. Morton,* 400 F.Supp. 610, 622 n. 6 (N.D. Cal.1975); *River v. Richmond Metropolitan Authority,* 359 F.Supp. 611, 639 (E.D.Va.), *aff'd per curiam,* 481 F.2d 1280 (4th Cir. 1973). *Contra, Illinois v. Hoffman, supra* at 76.

I therefore hold that section 13 of the Refuse Act, 33 U.S.C. § 407, does not give rise to a private right of action. Accordingly, plaintiff's claim under that provision must be dismissed for failure to state a claim upon which relief can be granted.[14]

■ Plaintiff also attempts to ground its suit upon the Fifth, Ninth and Fourteenth Amendments. This action is one which seeks to protect the environment. It generally has been held that there is no constitutional right to such protection. *See Ely v. Velde,* 451 F.2d 1130, 1139 (4th Cir. 1971); *Gasper v. Louisiana Stadium & Exposition Dist.,* 418 F.Supp. 716, 720–22 (E.D. La.1976); *Upper W. Fork River Watershed Ass'n v. Corps of Engineers,* 414 F.Supp. 908, 931–32 (N.D.W.Va.1976), *aff'd mem.* 556 F.2d 576 (4th Cir. 1977); *Pinkney v. Ohio Environmental Protection Agency,* 375 F.Supp. 305, 309–10 (N.D.Ohio 1974); *Hagedorn v. Union Carbide Corp.,* 363 F.Supp. 1061, 1064–65 (N.D.W.Va.1973); *Virginians for Dulles v. Volpe,* 344 F.Supp. 573, 579 (E.D.Va.1972), *aff'd in part and rev'd in part,* 541 F.2d 442 (4th Cir. 1976); *Tanner v. Armco Steel Corp.,* 340 F.Supp. 532, 536–37 (S.D.Tex.1972); *Environmental Defense Fund v. Corps of Engineers,* 325 F.Supp. 728, 739 (E.D.Ark.1971). Plaintiff cites no case to the contrary.

Although such a legal theory may be appealing, it is not "desirable for a lower court to embrace the exhilarating opportunity of anticipating a doctrine which may be in the womb of time, but whose birth is

---

**13.** *Alameda Conservation Ass'n v. California,* 437 F.2d 1087, 1088 (9th Cir.) *cert. denied,* 402 U.S. 908, 91 S.Ct. 1380, 28 L.Ed.2d 649 (1971) (sections 9, 10 & 12 of the Refuse Act, 33 U.S.C. §§ 401, 403 & 406); *Neches Canal Co. v. Miller & Vidor Lumber Co.,* 24 F.2d 763 (5th Cir. 1928) (sections 9 & 12 of the Refuse Act, 33 U.S.C. §§ 401 & 406); *Sierra Club v. Leslie Salt Co.,* 354 F.Supp. 1099, 1104–05 (N.D.Cal. 1972) (sections 9 & 10 of the Refuse Act, 33 U.S.C. §§ 401 & 403). *See Citizens Comm. for Hudson Valley v. Volpe,* 425 F.2d 97, 101 (2d Cir.), *cert. denied,* 400 U.S. 949, 91 S.Ct. 237, 27 L.Ed.2d 256 (1970) (sections 9 & 10 of the Refuse Act, 33 U.S.C. §§ 401 & 403); *Potomac River Ass'n v. Lundeberg Md. Seamanship School, Inc.,* 402 F.Supp. 344, 350, 354–58 (D.Md.1975) (section 10 of the Refuse Act, 33

U.S.C. § 403); *Sierra Club v. Morton,* 400 F.Supp. 610, 622–25 (N.D.Cal.1975) (sections 9 & 10 of the Refuse Act, 33 U.S.C. §§ 401 & 403); *River v. Richmond Metropolitan Authority,* 359 F.Supp. 611, 617 (E.D.Va.), *aff'd per curiam,* 481 F.2d 1280 (4th Cir. 1973) (sections 9 & 10 of the Refuse Act, 33 U.S.C. §§ 401 & 403); *Rucker v. Willis,* 358 F.Supp. 425, 427 (E.D.N.C.1973), *aff'd* 484 F.2d 158 (4th Cir. 1973) (section 10 of the Refuse Act, 33 U.S.C. § 403).

**14.** Because of this disposition, it is unnecessary to address the other issues raised by the defendants with respect to the claims based upon section 13 of the Refuse Act, 33 U.S.C. § 407.

distant." *Spector Motor Serv., Inc. v. Walsh,* 139 F.2d 809, 823 (2d Cir.) (Hand, J., dissenting), *vacated and remanded sub nom. Spector Motor Serv., Inc. v. McLaughlin,* 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101 (1944). It accordingly is found that the claims which are based on these constitutional provisions must be dismissed for failure to state a claim upon which relief can be granted.

The federal common law of nuisance is another theory upon which plaintiff predicates its complaint. An analysis of this area must begin with a review of *Illinois v. City of Milwaukee,* 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972). In that case, the State of Illinois brought an action against four Wisconsin cities and a City and a County Sewerage Commission seeking to stop the pollution of Lake Michigan, an interstate body of water. It was contended that such pollution constituted a public nuisance. The plaintiff attempted to invoke the original jurisdiction of the Supreme Court pursuant to Article III, section 2, clause 2 of the United States Constitution and 28 U.S.C. § 1251. Because it was ultimately decided that jurisdiction could arise under 28 U.S.C. § 1331(a),[15] the Court declined to exercise its original jurisdiction.

The Court cursorily disposed of the question of the jurisdictional amount by stating that "[t]he considerable interests involved in the purity of interstate waters would seem to put beyond question the jurisdictional amount provided in § 1331(a)." 406 U.S. at 98, 92 S.Ct. at 1390. The principal issue addressed by the Court was "whether pollution of interstate or navigable waters creates actions arising under the 'laws' of the United States within the meaning of § 1331(a)." *Id.* at 99, 92 S.Ct. at 1390. It was held that such an action does arise under § 1331(a) and "that § 1331(a) includes suits brought by a State." *Id.* The Court reasoned that the term "laws" includes federal common law. *See Parks v. "Mr. Ford",* 556 F.2d 132, 139 n. 9 (3d Cir. 1977). Accepting the rationale enunciated in *Texas v. Pankey,* 441 F.2d 236 (10th Cir. 1971), the Court found that federal common law embraced the ecological and environmental rights of a State when those rights are injured by sources outside of the State.

Defendants herein first argue that plaintiff cannot bring this action since it is not a State. It is agreed that the decision in *Illinois v. City of Milwaukee, supra,* should not be extended to encompass an action by a private person. In response to this contention, it should be noted that plaintiff is not a private person or entity but, rather, is a township. Cases such as *Parsell v. Shell Oil Co., supra,* are therefore inapposite.[16]

Defendants believe that there is language in *Illinois v. City of Milwaukee, supra,* which evidences an intent to limit reliance upon the federal common law of nuisance to a State. Although the Court in that case immediately was concerned with an action brought by a State, the broader holding of

---

15. 28 U.S.C. § 1331(a) provides as follows: "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States, except that no such sum or value shall be required in any such action brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity."

16. In *Parsell v. Shell Oil Co.,* 421 F.Supp. 1275 (D.Conn.1976), the court declined to sustain the proffered theory of the federal common law of nuisance on a variety of grounds. First, the plaintiff was a private person. The court noted that courts have allowed the United States to bring such an action, but that such right has not been extended to private plaintiffs. *See Committee for the Consideration of the Jones Falls Sewage Sys. v. Train,* 375 F.Supp. 1148, 1154–55 (D.Md.1974), *aff'd* 539 F.2d 1006 (4th Cir. 1976). Second, no interstate effect was alleged, interstate effect being defined as pollution originating within one state adversely affecting another state. *See Committee for the Consideration of the Jones Falls Sewage Sys. v. Train,* 539 F.2d 1006, 1010 (4th Cir. 1976); *Reserve Mining Co. v. United States,* 514 F.2d 492, 520–21 (8th Cir. 1975). Finally, the court seemed to believe that damages would be improper, at least in the circumstances before it.

In contrast to that situation, in the case presently before the Court, the plaintiff is not a private person or entity, there is an interstate effect and the relief sought is equitable.

the case was the "pollution of interstate or navigable waters creates actions arising under the 'laws' of the United States within the meaning of § 1331(a)." 406 U.S. at 99, 92 S.Ct. at 1390. The language to which defendants refer seems to have been utilized only because that action and the cases upon which the Court relied, involved a State plaintiff. In fact, the Court stated that

> it is not only the character of the parties that requires us to apply federal law. *See Georgia v. Tennessee Copper Co.,* 206 U.S. 230, 237; cf. *Wisconsin v. Pelican Ins. Co.,* 127 U.S. 265, 289; The Federalist No. 80 (A. Hamilton). As Mr. Justice Harlan indicated for the Court in *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 421–27, where there is an overriding federal interest in the need for a uniform rule of decision or where the controversy touches basic interests of federalism, we have fashioned federal common law . . Certainly these same demands for applying federal law are present in the pollution of a body of water such as Lake Michigan bounded, as it is, by four States.

*Id.* at 105 n. 6, 92 S.Ct. at 1393.

A number of courts have expanded upon the decision in *Illinois v. City of Milwaukee, supra* and have allowed the United States to bring an action to abate a common law nuisance. *See United States v. Stoeco Homes, Inc.,* 498 F.2d 597, 611 (3d Cir. 1974), *cert. denied,* 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975); *United States ex rel. Scott v. United States Steel Corp.,* 356 F.Supp. 556 (N.D.Ill.1973); *United States v. Ira S. Bushey & Sons, Inc.,* 346 F.Supp. 145, 148 (D.Vt.1972). *But see United States v. Lindsay,* 357 F.Supp. 784, 794 (E.D.N.Y.1973). Furthermore, in *Committee for the Consideration of the Jones Falls Sewage Sys. v. Train,* 539 F.2d 1006, 1009 n. 8 (4th Cir. 1976), the court stated that "[i]t is not essential that one or more states be formal parties if the interests of the state are sufficiently implicated." The interests sought to be protected herein are ones which affect the entire state, both aesthetically and economically.

I can see no reason why the township should not be entitled to bring an action based on the federal common law of nuisance. The extension of *Illinois v. City of Milwaukee, supra,* to include governmental units does not appear to be a drastic or an unwarranted application. In fact, such an expansion appears to aid in the effectuation of the concerns which prompted the Court to take the action further implementing the evolution of the federal common law. For instance, the Court stated that "[w]hen we deal with air and water in their ambient or interstate aspects, there is federal common law." 406 U.S. at 103, 92 S.Ct. at 1392. (footnote omitted). *See also Vermont v. New York,* 417 U.S. 270, 275 n. 5, 94 S.Ct. 2248, 41 L.Ed.2d 61 (1974). No statement was made that the interest of the State itself precipitated the development of such a common law.

Taking into consideration the equitable nature of the federal common law of nuisance, the clearly interstate nature of the dispute, and the significant repercussions that any matter involving the well-being and preservation of the New Jersey Coastal region has on the entire State, I find that plaintiff is entitled to bring an action based on the federal common law of nuisance. *See Byram River v. Port Chester,* 394 F.Supp. 618, 622 (S.D.N.Y.1975). *Cf. Michie v. Great Lakes Division, Nat'l Steel Corp.,* 495 F.2d 213, 216 n. 6 (6th Cir.) *cert. denied,* 419 U.S. 997, 95 S.Ct. 310, 42 L.Ed.2d 270 (1974).

It further is contended that the FWPCA pre-empts the federal common law of nuisance. In *Illinois v. City of Milwaukee, supra,* the Court found no such pre-emption, but this decision was before the 1972 amendments to the FWPCA. In fact, the Court noted that "[i]t may happen that new federal laws and new federal regulations may in time pre-empt the field of federal common law of nuisance. But until that comes to pass, federal courts will be empowered to appraise the equities of the suits alleging creation of a public nuisance by water pollution." *Id.* at 107. The question of pre-emption therefore focuses on the

effect of the 1972 amendments to the FWPCA.

In *United States ex rel. Scott v. United States Steel Corp., supra,* the court stated that the federal common law of nuisance was not pre-empted by the 1972 amendments, but specifically noted that its decision was prior to the adoption of the regulations. *See also United States v. Ira S. Bushey & Sons, Inc.,* 363 F.Supp. 110, 119–20 (D.Vt.), *aff'd mem.* 487 F.2d 1393 (2d Cir. 1973), *cert. denied,* 417 U.S. 976, 94 S.Ct. 3182, 41 L.Ed.2d 1146 (1973). In *Stream Pollution Control Bd. v. United States Steel Corp.,* 512 F.2d 1036 (7th Cir. 1975), the Seventh Circuit found it unnecessary to decide the pre-emption issue at that time since only jurisdictional motions were then before it. The Eighth Circuit in *Reserve Mining Co. v. United States,* 514 F.2d 492, 532 (8th Cir. 1975) (footnote omitted), found violations of the FWPCA and the Refuse Act and therefore "deem[ed] it unnecessary and, indeed, unwise to also rely on federal nuisance law."

Section 505(e) of the FWPCA, 33 U.S.C. § 1365(e), the provision which provides the authority for citizen suits, reads as follows: "Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any effluent standard or limitation or to seek any other relief (including relief against the Administrator or a State agency)." It would thus seem that Congress did not intend to pre-empt common law nuisance actions.[17] This interpretation is strengthened by the fact that statutes are not to be construed in derogation of common law unless such an intent is clear. *See Isbrandtsen Co. v. Johnson,* 343 U.S. 779, 783, 72 S.Ct. 1011, 96 L.Ed. 1294 (1932).

*Illinois v. City of Milwaukee,* 366 F.Supp. 298 (N.D.Ill.1973), was decided after the Supreme Court remanded the case to the district court for disposition. In that case, the court answered in the negative when faced with the question of whether the 1972 amendments of the FWPCA pre-empted the federal common law of nuisance. The court noted that prior to the 1972 amendments, it consistently had been held that the Act had not pre-empted the common law. It then was pointed out that when Congress intended provisions of the FWPCA to pre-empt other statutes, it made its objective explicit. Also rejected was the contention that certain recently enacted regulations pre-empted the federal common law of nuisance.

I am inclined to hold that there has been no pre-emption of the federal common law of nuisance by the 1972 amendments to the FWPCA and the regulations promulgated thereunder. Apparently, however, even the district court decision in *Illinois v. City of Milwaukee, supra,* was rendered before the effluent standards were announced. *See Stream Pollution Control Bd. v. United States Steel Corp., supra* at 1040 n. 10. At this time, I will therefore deny the motion to dismiss based on pre-emption without prejudice to a renewal thereof after further clarification of the nature of this suit, the new regulations and their effect on the pre-emption issue. *See Committee for the Consideration of the Jones Falls Sewage Sys. v. Train, supra* at 1010 (Butzner, J., dissenting).

The absence of special injury also is said to bar both the federal and state common law nuisance claims. Assuming, without deciding, that it is necessary to establish special injury, the presence or absence of such injury is a material issue of fact certainly not ripe for resolution at this time. Although defendants state that special injury was not alleged in the complaint, upon a liberal reading, the allegations therein are sufficient to imply such a contention.

There is another question with respect to the state and federal nuisance claims which has not been raised and therefore will not be decided at this juncture. The issue con-

---

17. In. *Committee for the Consideration of the Jones Falls Sewage Sys. v. Train, supra* at 1009 n. 9, the court stated that this provision evidenced the intent of Congress not to pre-empt state common law nuisance actions.

cerns the viability and effect of the state nuisance claim in the face of the applicability of the federal common law of nuisance cause of action. In *Illinois v. City of Milwaukee, supra* at 107, 92 S.Ct. at 1395 (footnote omitted), the Supreme Court stated that

> federal courts will be empowered to appraise the equities of the suits alleging creation of a public nuisance by water pollution. While federal law governs, consideration of state standards may be relevant. . . . Thus, a State with high water-quality standards may well ask that its strict standards be honored and that it not be compelled to lower itself to the more degrading standards of a neighbor. There are no fixed rules that govern; these will be equity suits in which the informed judgment of the chancellor will largely govern.

The direction of the Court's thinking may be somewhat clarified by its quotation of the following passage from *Texas v. Pankey, supra* at 241–42: "Federal common law and not the varying common law of the individual States is, we think, entitled and necessary to be recognized as a basis for dealing in uniform standard with the environmental rights of a State against improper impairment by sources outside its domain." 406 U.S. at 107 n. 9, 92 S.Ct. at 1395.[18] *See generally Miree v. DeKalb County,* 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977).

Accordingly, I deny defendants' motions to dismiss the claims based on nuisance.[19] An order consented to as to form shall be submitted within two weeks of the receipt hereof.

---

18. In *United States ex rel. Scott v. United States Steel Corp., supra,* the court dismissed without prejudice the state common law nuisance claim, finding it merely cumulative.

19. The defendants did not raise and therefore this Court will not address the question of the effect of sovereign immunity on the common law nuisance claims. *See generally, Illinois v. City of Milwaukee,* 406 U.S. 91, 108 n. 10, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972); *Dugan v. Rank,* 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963); *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); *Massachusetts v. United States Veterans Administration,* 541 F.2d 119 (1st Cir. 1976); *Board of Supervisors of Fairfax County, Va. v. United States,* 408 F.Supp. 556, 561 (E.D.Va.1976), *appeal dismissed mem.* 551 F.2d 305 (4th Cir. 1977); Public Law 94–574, 90 Stat. 2721, 5 U.S.C. § 702.